UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAW OFFICES OF BRADLEY J. HOFLAND, P.C., <br><br> Plaintiff, <br><br> v. <br><br> EMILY McFARLING, *et al.*, <br><br> Defendants. | 2:06-cv-00898-BES-LRL <br><br> **PETITION FOR AN ORDER COMPELLING ARBITRATION** |

# REPORT & RECOMMENDATION

This matter is before the court on defendants Emily McFarling's and Law Offices of Emily McFarling's (separately and jointly "McFarling") Petition for an Order Compelling Arbitration (#16), plaintiff's Opposition (#23), and McFarling's Reply (#25).

## BACKGROUND

The following facts, gleaned from the pleadings, are assumed to be true for the purposes of this motion. Defendant Emily McFarling formerly worked as an associate attorney for Hofland/Manning.[1] McFarling entered in an Associate Attorney Employment Agreement ("Agreement") with Hofland/Manning on June 24, 2005 and a Confidentiality Agreement on November 14, 2005. The Agreement contained the following arbitration clause:

> Arbitration: All disputes, differences and controversies arising out of, under, or in connection with this Agreement shall be settled and finally determined by Arbitration in Clark County, Nevada under the then existing Rules of the American Arbitration Association.

(Agreement, Mot. (#16) Ex. A at 5.)

---

[1] The Law Offices of Bradley J. Hofland, Inc. is a Nevada professional corporation currently doing business as Hofland/Eccles. During the periods relevant to the instant litigation Hofland/Eccles was known as Hofland/Manning.

Hofland/Manning brought suit against McFarling, alleging breach of fiduciary duty, unfair trade practices using computers, misappropriation and infringement of trade secrets, conversion, unlawful acts regarding computers, breach of contract, breach of the covenant of good faith and fair dealing, computer fraud, racketeering,[2] and tortious interference with contract.

McFarling now petitions the court to compel arbitration under the terms of the Agreement. Plaintiff opposes the petition, contending that the claims asserted by plaintiff in its amended complaint are not within the scope of the arbitration clause contained in the Agreement.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") applies to individual employment contracts such as the one at issue in this dispute. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). Section 2 of the FAA sets forth "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp v. Mercury Const. Co.*, 460 U.S. 1, 24 (1983). To effect this policy courts liberally construe any contractual language pertaining to the arbitration, and resolve doubts in favor of arbitrability. *See Id.* at 24–25.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This applies equally to instances where enforcement of the arbitrational issues results in bifurcated proceedings. *See Id.* at 220–21 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 (1983) (concluding that though bifurcation of the proceeding is an unfortunate consequence of enforcement, it "occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.")).

A party contesting the submission of the claim to arbitration must clearly show that the

---

[2] Carrie Brigham is also named in the Amended Complaint. However, she never entered into an employment agreement with Hofland/Manning.

presumption of arbitrability does not apply. *See AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986). The arbitrability of a particular issue turns on principles of contract interpretation, as "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

**DISCUSSION**

**I. Application of the Federal Arbitration Act**

In pending litigation, a petition by one of the parties to compel arbitration under the FAA is governed by 9 U.S.C. § 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such an agreement would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties for an order directing that such arbitration proceed in the manner provided for in such agreement.

In addressing a motion to compel arbitration, a court is required to determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

**A. Whether the Parties Agreed to Arbitrate**

As with any other contract dispute, the court first looks to the express terms of the arbitration clause. In this case, the clause requires the parties to arbitrate "[a]ll disputes, differences and controversies arising out of, under, or in connection with this Agreement . . . ." These terms unambiguously reflect the parties intent to arbitrate disputes arising from the Agreement and to be bound by the arbitration decisions that resolve such disputes. It is undisputed, however, that the Confidentiality Agreement -- as opposed to the employment agreement -- does not contain an arbitration clause.

. . .

3

**B. Scope of the Arbitration Agreement**

Plaintiff contends that its claims against McFarling do not fall within the scope of the arbitration clause. Plaintiff asserts that its claims are based on McFarling's theft and wrongful retention of plaintiff's data and documents. Plaintiff also asserts that the breach of contract claim contained in the Amended Complaint is based solely on the Confidentiality Agreement between itself and McFarling. McFarling responds that the simple removal from the Complaint of any reference to the Agreement does not change the factual nature of the underlying claim.[3] She argues that as a factual matter plaintiff's contractual claims clearly arise in connection with her employment.

Plaintiff urges the court to follow *O'Kelly v. Vanguard Integrity Prof'ls, Inc.*, No. 2:06-cv-00170, 2006 U.S. Dist. LEXIS 50403, 2006 WL 2057225 (D. Nev. July 17, 2006), a recent decision by this court wherein Judge Jones found that the arbitration agreement at issue, although valid and enforceable, did not cover O'Kelly's Age Discrimination in Employment Act ("ADEA") and employment claims. *Id.* at *5.

The arbitration clause in *O'Kelly* provided in pertinent part:

> In the event of any dispute arising under this Employment Agreement, including any dispute regarding the nature, scope or quality of services provided by either Party hereto, it is hereby agreed that such dispute shall be resolved by binding arbitration to be conducted by the American Arbitration Association . . . .

*Id.* at *2.

Judge Jones concluded that this language must be read as including only actions within the scope of the Employment Agreement. Consequently, the clause did not cover O'Kelly's claims of alleged age, religious, and disability discrimination in the workplace. Judge Jones's determination on the arbitrability of O'Kelly's ADEA claim was based on the fact plaintiff did not show that Congress intended to preclude a waiver of judicial forum for ADEA claims. Here, plaintiff's only federal claim

---

[3] McFarling's Reply requests the court to disregard the Amended Complaint as a "sham." This request was not included in McFarling's Motion and the court declines to consider the argument. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("issues cannot be raised for the first time in a reply brief.") (citation omitted).

4

was brought under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030. This Act does not contain the procedural protections afforded under the ADEA, thus, does not implicate the question of whether Congress intended those claims to be nonarbitrable.

In construing arbitration clauses, courts should first determine the breadth of the arbitration clause. *See Simula, Inc. v. Autolive, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999); *Boston Telco Group v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1046–47 (N.D. Cal. 2003). The arbitration clause in the *O'Kelly* case is a narrow one. The arbitration clause contained in the Agreement here is an exemplar of a broad arbitration provision. *See e.g., Simula, Inc.*, 175 F.3d at 720 (interpreting the language"[a]ll disputes arising in connection with this Agreement" broadly); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (finding that the language "[a]ll disputes arising in connection with the present contract shall be finally settled" by arbitration was sufficiently broad in scope to include claims for unfair trade practices, libel, and defamation); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes).

In the context of an arbitration clause purporting to cover all disputes arising in connection with the agreement, factual allegations need only "touch matters covered by the contract containing the arbitration clause, and all doubts are to be resolved in favor of arbitrability." *Simula, Inc*., 175 F.3d at 721 (citations and internal quotes omitted). This is true even when there is more than one contract, as in the instant matter. In *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995), there were two separate but related contracts at issue. One of the contracts had an arbitration clause and the later contract did not. The *Collins* court stated that in determining the scope of the arbitration clause the question is not whether the claims arise under the agreement that has no arbitration clause; the question is whether the wrongful conduct alleged in the complaint is related to the agreement that contains such a clause. *Id.* at 21. This court applies these principles to claims one through eleven of the Amended Complaint.

5

**1. First, Second, Third, Fifth, Eighth, Ninth, and Tenth Claims for Relief**

Plaintiff alleges that McFarling resigned from Hofland/Manning on or about April 24, 2006 to start a venture to compete against Hofland/Manning. Plaintiff claims that McFarling and her secretary, Brigham, conceived and executed a plan to steal and retain valuable and proprietary information belonging to Hofland/Manning. Plaintiff claims McFarling and Brigham, in executing their plan, improperly accessed the Hofland/Manning computer system and stole documents, supplies, and client files. Using the allegedly stolen information, McFarling allegedly urged clients of Hofland/Manning to terminate their relationship with the firm and switch their legal representation to McFarling. McFarling also allegedly stole client payments for services rendered by Hofland/Manning.

In its Amended Complaint plaintiff quotes the following paragraph from McFarling's Confidentiality Agreement:

> [A]ll records and files, whether electronic or otherwise, of [Law Firm], are property of [Law Firm] and considered confidential. No employee is authorized to copy or disclose any file, record, document or information contained therein. Confidential information includes all letters, documents, and any other information concerning transitions and other matters with clients, client and/or employee lists, payroll or personnel records of past or present employees, financial records of the [Law Firm], all records pertaining to purchases from vendors or suppliers and documents concerning operating procedures of the [Law Firm].

Am. Compl. (#14) at 2.

The Employment Agreement, although more general, provides for essentially the same terms:

> Records and Files: All records, documents and files concerning clients of the Firm belong to and shall remain the property of the Firm. On termination of employment, the Attorney shall not be entitled to keep or reproduce the Firm's Records, documents or files relating to any client unless the client shall specifically request that its files be transmitted to the Attorney. The Attorney acknowledges and agrees that all work performed by her while under the employ of the Firm is the Firm's sole property and the Attorney shall not disseminate forms generated by the Firm or the Attorney except in the normal practice of law.

Agreement ¶ 14, Mot. (#16) Ex. A. at 3.

In its First Claim plaintiff alleges that McFarling breached her fiduciary duty by stealing and using valuable and proprietary data and documents belonging to Hofland/Manning. Its Second Claim

6

alleges McFarling engaged in unfair trade practices using computers by taking and using the proprietary data stored on Hofland/Manning's computers. She allegedly did this knowing that the information stored thereon was created by and for the benefit of Hofland/Manning. The Third Claim asserts that all documents involving Hofland/Manning's business operations, work product, and client information constitute trade secret information within the meaning of the Uniform Trade Secrets Act, Nev. Rev. Stat. §§ 600A.010–600A.100. Plaintiff claims that McFarling misappropriated and used Hofland/Manning's trade secrets without Hofland/Manning's consent. Plaintiff's Fifth Claim alleges that McFarling engaged in unlawful acts regarding computers; in short, it claims McFarling used its computer equipment, system, or network to access data, programs, and supporting documents which McFarling had no permission to access or use. The Eighth Claim alleges that McFarling knowingly, and with intent to defraud, accessed a Hofland/Manning computer. The Ninth Claim for Relief is a racketeering allegation. One aspect of the racketeering claim is that McFarling wrongfully took and obtained property from Hofland/Manning, including client contact information, intake forms, and assets of the Law Firm's clients. Finally, the Tenth Claim for Relief asks for injunctive relief prohibiting McFarling from appropriating, using, or disclosing Hofland/Manning's confidential and proprietary information and, requiring the return of same.

The conduct alleged in these claims arises out of, or under, the terms of the Agreement. Notably, language in the Agreement provides protection for Hofland/Manning's proprietary client information after the termination of McFarling—the Confidentiality Agreement does not. The allegedly stolen data, if not specific and valuable proprietary client information, is certainly related to it. Thus, the First, Second, Third, Fifth, Eighth, Ninth, and Tenth Claims for Relief are arbitrable.

### 2. Fourth and Eleventh Claims for Relief

The Fourth Claim for Relief is conversion; the Eleventh is tortious interference with contract. The charges in these Claims revolve around McFarling's alleged theft of not only Hofland/Manning's proprietary information, but also money in the form of client fees as well. Consequently, plaintiff claims interference by McFarling in the written fee/retainer agreements it entered into with its clients.

Paragraph 15 of McFarling's Agreement provides:

> Fees: All fees and compensation received or realized as a result of the rendition of the professional legal services by the Attorney shall belong to and be paid to the Firm. Any fees or honoraria received by the Attorney for professional services or other professional activities performed by the Attorney shall belong to the Firm.

Agreement ¶ 15, Mot. (#16) Ex. A at 3.

Again, the conduct alleged in connection with these claims arises out of, or under, the terms of the Agreement. The language in the Agreement specifies the prohibited conduct of which McFarling is accused. Thus, plaintiff's Fourth and Eleventh Claims for Relief are arbitrable.

### 3. Sixth and Seventh Claims for Relief

The Sixth and Seventh Claims concern McFarling's alleged breach of her Confidentiality Agreement. The breach was manifested, according to plaintiff, by McFarling's conduct, which is the conduct prohibited under paragraphs 14 and 15 of her Agreement. Thus, although the breach is alleged to be of McFarling's Confidentiality Agreement,[4] the conduct that constitutes the alleged breach arises out of, under, or in connection with the Agreement as well. Thus the Sixth and Seventh Claims for Relief are arbitrable.

### C. Conclusion

Although plaintiff attempts to cast its claims under the Confidentiality Agreement and not the (employment) Agreement, it is clear that its claims arise from and are necessarily connected to the Agreement such that they are covered by its arbitration clause.

## II. Claims against Carrie Brigham

Hofland/Manning hired Carrie Brigham to be McFarling's secretary on or about June 20, 2005. Brigham did not into enter an agreement that contained an arbitration agreement, but did enter into a Confidentiality Agreement.

---

[4] Although the court declined to entertain McFarling's "sham" document argument, it is worthy of note that the original Complaint contained a breach of contract claim and breach of the covenant of good faith and fair dealing in regard to the Agreement. (Compl. (#1) at 12.)

Although McFarling and Brigham are accused of like conduct, under the FAA "an agreement between two or more parties to submit their disputes to arbitration is not rendered unenforceable merely because there are additional parties to the disputes who are not bound by an arbitration agreement." *In re Mercury Constr. Corp.*, 656 F.2d 933, 941 n.14 (4th Cir. 1981) (citation omitted); *see also Dean Witter Reynolds Inc.*, 470 U.S. at 217 (finding that the FAA requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be separate proceedings in separate forums).

**III. Stay**

"Once the court has determined that a dispute falls within the scope of an arbitration agreement, the proceedings in the case as to the arbitrable issue must be stayed pending the completion of arbitration." *Benson Pump Co. v. S. Cent. Pool Supply*, 325 F. Supp. 2d 1152, 1160 (D. Nev. 2004). Section 3 of the FAA provides in relevant part that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." However, the decision to stay the remaining nonarbitrable claims is soundly vested in the court's discretionary authority to control its docket. *See Moses H. Cone*, 460 U.S. at 21 n.23.

In determining whether to stay the remaining nonarbitrable claims a court may take into consideration issues of judicial economy, such as the need to conserve the time and effort of the court, counsel, and the parties. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Atsa of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983). It appears to the court that judicial economy would best be served by staying this proceeding until the claims against McFarling have been arbitrated. Because the claims allege McFarling and Brigham participated in the same conduct arbitration might resolve similar questions, and may well obviate further litigation. In any case, the arbitrator is likely to decide issues that will, at least, streamline subsequent proceedings before this court.

. . .

. . .

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendants Emily McFarling and Law Offices of Emily McFarling's Petition for an Order Compelling Arbitration (#16) should be granted, and that these proceedings should be stayed pending resolution of the arbitration.

DATED this 12th day of February, 2007.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**